## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

PATRICK HANKINS, and　　　　　　　　)
TRUDY HANKINS,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　　　Case No. 14-CV-0398-CVE-PJC
　　　　　　　　　　　　　　　　　　　　)
WELCH STATE BANK,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　　　)

## OPINION AND ORDER

Now before the Court is defendant's motion to dismiss and brief in support. Dkt. # 13. Defendant moves to dismiss plaintiffs' one-count complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that plaintiffs have failed to state a claim under Oklahoma law for tortious interference with contract. Id. at 1. Plaintiffs respond that the factual allegations in the complaint are sufficient to state a tortious interference claim. Dkt. # 16, at 2. Plaintiffs request that, should the Court grant defendant's motion, they be allowed to amend the complaint and provide additional factual allegations for their claim. Id. at 4. Defendant has filed a reply. Dkt. # 17.

## I.

Plaintiffs are married, reside in Texas, and own a home in Welch, Oklahoma. Dkt. # 2, at 1, 2. On January 31, 2014, plaintiffs entered into a real estate agreement (the agreement) for sale of the home with a prospective buyer, Rachel Walker. Id. at 2. The agreement gave Walker the power to terminate the agreement if a home inspection reported conditions not acceptable to her. Dkt. # 13-1,

at 2.[1] Walker approached defendant, a for-profit bank with its principal place of business in Welch, Oklahoma, to finance her purchase. Dkt. # 2, at 1, 2. Defendant requested an appraisal of the property, and the appraisal was conducted on February 18, 2014. Id. at 2. The appraisal noted "some settling as [to] a few low areas in [the] floor near [the] wall" and that the "kitchen laminate flooring had separation." Dkt. # 13-2, at 10.

On March 13, 2014, defendant notified plaintiffs of the potential structural issues and stated that it would hire a general contractor to inspect the home. Dkt. # 2, at 2. The contractor inspected the home on March 26, 2014, and provided defendant with a written report of his findings on April 2, 2014. Id. The report stated, inter alia, that the foundation was "[u]nstable, therefore causes movement to wood structure, resulting in an uneven floor." Dkt. # 13-3, at 1. It also concluded that the "[k]itchen floor shows separation in vinyl" and that the floor sills were "tilting outward." Id.

On April 2, 2014, defendant notified Walker of the result of the inspection, and it declined to finance the purchase of the home. Dkt. # 2, at 2. Walker and plaintiffs began discussing an owner financing arrangement that same day. Id. On April 3, 2014, one of defendant's employees, an

---

[1]    Plaintiffs did not attach to the complaint a copy of the agreement, the appraisal, or the structural inspection reports from either inspector. Defendant attached to its motion copies of the agreement, the appraisal, and the inspection report of its inspector. See Dkt. ## 13-1, 13-2, 13-3. Generally, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); see also David v. City & Cnty. of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). The Court finds that plaintiffs repeatedly reference all three documents in the complaint, see Dkt. # 2, at 2-4, and that all three are central to plaintiffs' claim. Plaintiffs have not disputed the authenticity of these documents. Thus, the Court will consider all three documents and need not convert defendant's motion to a motion for summary judgment.

assistant vice president, sent Walker an e-mail containing a copy of the structural inspection report and the listing of a home being offered for sale by another of defendant's employees. Id. at 3. On April 10, 2014, Walker notified plaintiffs that she was terminating the agreement. Id.

Also on April 10, 2014, plaintiffs spoke to the general contractor who carried out the structural inspection. Id. He told plaintiffs that defendant "misconstrued the report" and that the house was in good condition. Id. However, he refused to so state in writing. Id. On April 21, 2014, plaintiffs hired a licensed engineer to perform a structural inspection of the property. Id. The second inspection found that the property "was in overall sound/stable condition." Id. Plaintiffs filed suit on July 17, 2014. Id. at 1.

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Twombly, 550 U.S. at 555;

Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy

Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those

allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of County Comm'rs, 263 F.3d

1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-

10 (10th Cir. 1991).

### III.

Defendant argues that plaintiffs' claim for tortious interference should be dismissed because

the complaint fails to allege essential elements of the tort. Dkt. # 13, at 2. Since 1912, the Oklahoma

Supreme Court has recognized the tort of tortious interference with contract as a means of protecting

the parties to a contract from outside action. Schonwald v. Ragains, 1912 OK 210, ¶ 6, 122 P. 203,

206 ("[I]t is a violation of a legal right to interfere with contractual relations recognized by law, if

there be no sufficient justification for the interference."). Oklahoma has adopted the Restatement

(Second) of Torts as to tortious interference claims. Wilspec Techs., Inc. v. DunAn Holding Grp.

Co., 2009 OK 12, ¶¶ 1,7, 204 P.3d 69, 70, 71. The Restatement recognizes three species of tortious

interference: "(1) section 766 interference with a third party's performance with [sic] an existing

contract; (2) section 766A interference with plaintiff's own performance; or (3) section 766B

interference with prospective contractual relations not yet reduced to contract." Id. ¶ 6, 204 P.3d at

71. Plaintiffs have alleged a § 766 claim for tortious interference. Dkt. # 2, at 3-4, see also Dkt. #

16, at 2. Under Oklahoma law, a § 766 tortious interference claim has four elements: "(1) the

interference was with an existing contractual or business right; (2) such interference was malicious

and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the

interference proximately caused damage." Wilspec Techs., Inc., ¶ 15, 204 P.3d at 74 (citing Mac Adjustment, Inc. v. Prop. Loss Res. Bureau, 1979 OK 41, ¶ 5, 595 P.2d 427, 428). Defendant asserts that plaintiffs' complaint fails as to the first three elements, Dkt. # 13; defendant makes no argument as to the fourth element, proximate cause. For purposes of this opinion, the Court will assume that plaintiffs have adequately pled the fourth element.

A. Interference with an Existing Contractual or Business Right

Defendant argues that plaintiffs cannot state the first element of a tortious interference claim, interference with an existing contract or business right, because it requires a breach of contract. Plaintiffs asserted no breach of the agreement, alleging instead that defendant's actions caused Walker's nonperformance. Dkt. # 2, at 3-4. Defendant relies heavily on this Court's prior opinion in McGregor v. Kormondy, No. 11-CV-570-CVE-TLW, 2012 WL 3023202 (N.D. Okla. July 24, 2012), which stated that the "recent declaration of the Oklahoma Supreme Court [in Wilspec Technologies, Inc.] that a tortious interference claim under § 766 requires a breach of the contract is . . . controlling . . . ." Id. at *4. Because the Court wrote that § 766 could be satisfied by showing a breach of contract, without mentioning nonperformance, defendant asserts that only a breach can satisfy § 766. Dkt. # 13, at 5. Defendant reads McGregor too narrowly. In that case, the plaintiff brought a claim for tortious interference against his former business partner, alleging the former partner interfered with a contract between the plaintiff and the corporation that the two had founded together. Id. at *1-*2. In a prior separate opinion, the Court determined that there was no breach of a contract between the plaintiff and the corporation. Id. at *4. The Court reviewed the law of tortious interference in Oklahoma, with particular attention to the recent ruling of the Oklahoma Supreme Court in Wilspec Technologies, Inc. Id. at *3-*4. The Court found that "the Oklahoma Supreme

5

Court unequivocally stated that, where a plaintiff alleges that defendant has intentionally interfered with a contract pursuant to § 766, a breach or nonperformance of the third party is required for liability to attach." Id. at *4. The plaintiff in McGregor had alleged a breach of contract, making the previous finding of no breach dispositive of his tortious interference claim. Id.

The present case is readily distinguishable from McGregor. Plaintiffs do not allege and have never alleged a breach of the agreement. Rather, they argue that defendant's actions caused Walker's nonperformance of the agreement. Dkt. # 2, at 3-4. The Restatement (Second) of Torts, which the Oklahoma Supreme Court adopted in Wilspec Technologies, states that "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability . . . ." RESTATEMENT (SECOND) OF TORTS § 766 (1979); see also Wilspec Techs., Inc., ¶ 7, 204 P.3d at 71-72. The Oklahoma Supreme Court made clear that nonperformance suffices to show tortious interference: "[W]e believe that where the law provides a remedy against a tortfeasor who induces or causes a third party not to perform the contract, the protection against such tortious acts extends to a party who is unable to perform his/her contract or where such performance becomes more costly or unduly burdensome." Wilspec Techs., Inc., ¶ 16, 204 P.3d at 74. Showing that a defendant's actions caused a third party not to perform an existing contract with plaintiff is, therefore, a recognized means of pleading the first element of a claim for tortious interference under Oklahoma law. Plaintiffs' complaint alleges that Walker elected not to perform under the agreement because defendant refused to finance the transaction and promoted to her another home for sale. Dkt. # 2,

at 3.[2] The complaint thus adequately alleges facts sufficient to state the first element of a claim of tortious interference.

---

[2] Plaintiffs allege in the complaint that defendant's employee sent the e-mail with the alternate listing, and that defendant is vicariously liable for the employee's allegedly tortious actions. Dkt. # 2, at 3-4. Under the doctrine of vicarious liability, "a master is liable for injury proximately resulting from the acts of a servant done within the scope of the servant's employment." Hatcher v. Traczyk, 2004 OK CIV APP 77, ¶ 8, 99 P.3d 707, 709. Oklahoma courts have never directly addressed whether a corporation can be vicariously liable for tortious interference with contract because of the actions of its employees. However, in cases where a corporation is alleged to have committed tortious interference, Oklahoma courts have imputed the actions of employees to the corporation without addressing the issue of vicarious liability. See, e.g., Morrow Dev. Corp. v. Am. Bank & Trust Co., 1994 OK 26, ¶ 10, 875 P.2d 411, 416-17 (ascribing actions to the defendant bank that could only have been accomplished by bank employees); Del State Bank v. Salmon, 1976 OK 42, ¶¶ 11-13, 548 P.2d 1024, 1027 (same). Moreover, defendant assumes in its motion that it can be liable for its employee's e-mail. Dkt. # 13, at 9 ("The same is true if one considers [defendant's] act of conveying to [Walker] information about another house for sale."). The Court will therefore assume, for purposes of this motion only, that defendant can be vicariously liable for tortious interference if that interference is committed by one of its employees within the scope of her employment. The complaint alleges that defendant's employee's e-mail included both defendant's structural inspection report and the listing of another home for sale. Dkt. # 2, at 3. The reasonable inference, drawn in the light most favorable to plaintiffs, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), is that the employee was acting within the scope of her employment when she sent the e-mail because the employee had no apparent reason, other than her employment with defendant, to e-mail the inspection report to Walker. Further, defendant argues that providing Walker with the listing was an attempt to keep Walker as a customer. Dkt. # 13, at 9-10. Thus, the complaint alleges sufficient facts to state the vicarious liability of defendant for its employee's act of sending the e-mail with the alternate listing.

<u>B. Interference That Is Neither Justified, Privileged, nor Excusable</u>[3]

Defendant contends that plaintiff has failed to state the third element of a claim for tortious interference--that the interference was neither justified, privileged, nor excusable--because all of its actions were privileged. Dkt. # 13, at 8. An action that is justified, privileged, or excused cannot give rise to a claim for tortious interference because "it is not unlawful for one to 'interfere with the contractual relations of another if [this is done] by fair means, if [it is] accompanied by honest intent, and if [it is done] to better one's own business and not to principally harm another.'" <u>Morrow</u>, ¶ 10 n. 21, 875 P.2d at 416 n.21 (alterations in original) (quoting <u>Del State Bank v. Salmon</u>, 1976 OK 42, 548 P.2d 1024). The Oklahoma Supreme Court examined this element in <u>Morrow</u>, which is instructive here. In that case, a real estate developer alleged that a bank tortiously interfered with a real estate development contract between it and the property owner. <u>Id.</u> ¶ 3-4, 875 P.2d at 412. As part of an agreement with the bank for financing, the property owner contracted with the developer to manage the development project. <u>Id.</u> ¶ 4. After the project experienced financial setbacks, the property owner transferred title of the property to the bank in lieu of foreclosure, effectively terminating the development contract. <u>Id.</u> The Oklahoma Supreme Court, in determining whether the bank's actions were privileged, asked whether the bank's "sole or primary purpose" was to

---

[3]    Although the Oklahoma Supreme Court listed it as the third element in a tortious interference claim, <u>Wilspec Techs., Inc.</u>, ¶ 15, 204 P.3d at 74, the determination of whether a defendant's actions were justified, privileged, or excused can bear on the second element of the tort, whether the action was malicious and wrongful. <u>See</u> <u>Morrow</u>, ¶ 10, 875 P.2d at 416 (finding no malice where the defendant's actions were privileged); <u>James Energy Co. v. HCG Energy Corp.</u>, 1992 OK 117, ¶ 29, 847 P.2d 333, 340 (finding no malice where defendant was "merely protecting its interest"). This is because, as the Oklahoma Supreme Court has stated, malice is "an unreasonable and wrongful act done intentionally, <u>without just cause or excuse</u>." <u>Tuffy's, Inc. v. City of Okla. City</u>, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165 (emphasis added). Thus, the Court will address the third element of the tort before the second.

interfere with the development contract. Id. at ¶ 10, 875 P.2d 411, 416. If the actions were "clearly intended to benefit and support [the bank's] legitimate economic interests," then they were privileged. Id., ¶ 10, 875 P.2d at 417. The Oklahoma Supreme Court found that the bank's "primary focus was protection of [its] legitimate economic interests and not interference with the [development contract]." Id. As a result, the Oklahoma Supreme Court ruled that the bank's conduct was privileged and that the developer had failed to prove all elements of tortious interference. Id.

Defendant's actions are not clearly privileged. Although plaintiffs do not allege precisely what action constituted the alleged tortious interference, two possibilities are apparent from the complaint: defendant's unwillingness to finance the purchase; or, providing Walker with a real estate listing for a home offered for sale by one of defendant's employees. Defendant's refusal to finance Walker's purchase of plaintiffs' property, like the bank's actions in Morrow, was primarily intended to benefit its own economic interests. The complaint states that both the appraisal, completed on February 18, 2014, and the first structural inspection, completed March 26, 2014, indicated problems with the structure of the home. Dkt. # 2, at 2. On April 2, 2014, prior to any other actions by the parties, defendant notified Walker that it would not finance her purchase of the home. Id. The reasonable inference to draw from these facts is that defendant's decision was based on the appraisal and first structural inspection, and plaintiffs have provided no facts or arguments otherwise. Like the decision of the bank in Morrow, defendant's decision not to finance Walker's purchase was made for the primary purpose of protecting its economic interests, in this case to avoid making a loan without acceptable collateral. Any effect the decision may have had on the agreement would have been incidental to defendant's primary purpose. As a result, defendant's decision not to finance

Walker's purchase of plaintiffs' home is privileged, and it cannot serve as the basis for plaintiffs' claim.

The same cannot be said for defendant's employee's act of supplying Walker with the listing of another home for sale. The complaint alleges that, following defendant's decision not to finance on April 2, 2014, Walker and plaintiffs began discussions of owner financing of the purchase. Dkt. # 2, at 2. On April 3, 2014, one of defendant's employees supplied Walker with a copy of defendant's inspection report and the listing of a home offered for sale by another employee. Id. at 3. On April 10, 2014, Walker notified plaintiffs that she was terminating the agreement. Id. Plaintiffs allege that defendant "misconstrued" the results of the first inspection and that a second inspection found no problems in the structure. Id. These facts, construed in the light most favorable to plaintiffs, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), plausibly allege that defendant's[4] primary intent in sending the listing was to interfere with the agreement. Defendant states that it undertook the action in an effort to keep Walker as a client, and gaining a new client would be a legitimate economic interest for a bank. Dkt. # 13, at 9-10; see also Morrow, ¶ 10, 875 P.2d at 417. However, unlike the decision of the bank in Morrow that only indirectly affected a contract, defendant's interest in financing Walker's purchase of a home could only be achieved by directly interfering with the agreement between Walker and plaintiffs, which defendant had already refused to finance. Thus, the complaint alleges facts sufficient to state the third element of a claim for tortious interference.

---

[4]       See footnote 2, supra.

<u>C. Malicious and Wrongful Interference</u>

Defendant also argues that plaintiff has failed to adequately state the second element of a claim for tortious interference, which requires a plaintiff to plead that the interference was "malicious and wrongful." <u>Wilspec Techs., Inc.</u>, ¶ 15, 204 P.3d at 74 (citing <u>Mac Adjustment, Inc.</u>, ¶ 5, 595 P.2d at 428). In the context of a tortious interference claim, malice is "an unreasonable and wrongful act done intentionally, without just cause or excuse," and it "requires a showing of bad faith." <u>Tuffy's, Inc. v. City of Okla. City</u>, 2009 OK 4, ¶ 14, 212 P.3d 1158, 1165. As discussed above, defendant's action in sending Walker information about a home for sale was not justified or excused. The complaint alleges that the e-mail was sent by one of defendant's employees, and it does not state that the inclusion of the listing in the e-mail was a mistake. Dkt. # 2, at 3. Viewed in the light most favorable to plaintiffs, the complaint thus alleges an intentional act that was without justification or excuse. Further, the complaint alleges that it was defendant's intent to cause Walker not to perform the agreement. <u>Id.</u> From this and the other factual allegations in the complaint, the Court can infer that plaintiffs have alleged that defendant sent the e-mail in bad faith and that the act was unreasonable. Plaintiffs have plausibly alleged facts that, if proven, could demonstrate malice, and that is all they must do to survive a motion under Rule 12(b)(6). <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). As the complaint alleges sufficient facts for all elements of a claim for tortious interference, defendant's Rule 12(b)(6) motion to dismiss should be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss and brief in support (Dkt. # 13) is hereby **denied**.

**DATED** this 28th day of October, 2014.

_Claire V Eagl_

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE